UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
              :
IN RE VEECO INSTRUMENTS INC.       :     05 MD 1695 (CM)(GAY)
SECURITIES LITIGATION            :
              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
              :
THIS DOCUMENT RELATES TO:       :
ALL ACTIONS                 :
              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF DEFENDANTS VEECO INSTRUMENTS INC.,
EDWARD H. BRAUN, JOHN F. REIN, JR. AND JOHN P. KIERNAN IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
CONCERNING VEECO'S INTERNAL INVESTIGATION**


# REDACTED

**(ORIGINAL NON-REDACTED VERSION FILED UNDER SEAL PURSUANT
TO CONFIDENTIALITY ORDER DATED MAY 16, 2006)**


GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Defendants Veeco
Instruments Inc., Edward H. Braun,
John F. Rein, Jr., John P. Kiernan*


August 25, 2006

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT .................................................................................................................... 8

    I.    The Requested Documents Are Protected by the Work Product Doctrine ............ 8

        A.    Plaintiffs Rely On An Outdated Standard .................................................. 8

        B.    The Documents Were Prepared in Anticipation of Litigation ................. 11

        C.    Disclosure of Internal Investigation Documents to Ernst & Young Did Not Waive Work Product Protection ...................................... 14

    II.    Disclosure Of A Finding Of The Kaye Scholer Investigation In Public Disclosures And A Letter To The SEC Does Not Result In Waiver .................. 16

    III.    Plaintiffs Fail to Demonstrate "Substantial Need" ............................................. 20

    IV.    The Requested Documents Are Protected By The Attorney-Client Privilege ..... 23

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,*
No. 97 Civ. 4978 (LMM), 2002 WL 31385824 (S.D.N.Y., Oct. 21, 2002) ...................... 21, 22

*AMCO Ins. Co. v. Madera Quality Nut LLC,*
No. 1:04-cv-06456-SMS, 2006 WL 931437 (E.D.Cal., Apr. 11, 2006) ................................... 12

*Brock v. Frank V. Panzarino, Inc.,*
109 F.R.D. 157 (E.D.N.Y. 1986) ................................................................................. 21

*Carter v. Cornell Univ.,*
173 F.R.D. 92 (S.D.N.Y. 1997) ................................................................................. 22

*City of Worcester v. HCA Mgmt. Co. Inc.,*
839 F.Supp. 86 (D. Mass. 1993) ................................................................................. 12

*Fine v. Bellefonte Underwriter's Ins. Co.,*
91 F.R.D. 420 (S.D.N.Y. 1981) ................................................................................. 12

*Fisher v. United States,*
425 U.S. 391 (1976) ................................................................................................. 23

*Granite Partners, L.P. v. Bear, Stearns & Co., Inc.,*
184 F.R.D 49 (S.D.N.Y. 1999) ................................................................................. 18

*Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., Partnership,*
154 F.R.D. 202 (N.D.Ind. 1993) ................................................................................. 17

*Hickman v. Taylor,*
329 U.S. 495, (1947) ......................................................................................... 8, 10

*Hollinger Int'l v. Hollinger, Inc.,*
230 F.R.D. 508 n.9 (N.D.Ill. 2005) ................................................................................. 13

*In re Circle K Corp.,*
96 Civ. 5801 (JFK), 1997 U.S. Dist. LEXIS 713 (S.D.N.Y. Jan. 28, 1997) ........................... 20

*In re Dayco Corp. Derivative Sec. Litig.,*
99 F.R.D. 616 (S.D. Ohio 1983) ................................................................. 3, 16, 17, 19

*In re Grand Jury Proceedings,*
219 F.3d 175, 190 (2d Cir. 2000) ................................................................................. 20

*In re Grand Jury Subpoena,*
357 F.3d 900 (9th Cir. 2004) ................................................................................. 13

*In re Kidder Peabody Sec. Litig.,*
168 F.R.D. 459 (S.D.N.Y. 1996) ......................................................................... 9, 11, 18

*In re Leslie Fay Co. Sec. Litig.,*
161 F.R.D. 274 (S.D.N.Y. 1995) ................................................................................. 11

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*In re Sealed Case,*
676 F.2d 793 (D.C. Cir. 1982) .................................................................... 20

*In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher,*
No. M8-85 (JSM), 1997 WL 118369 (S.D.N.Y., Mar. 14, 1997) ........................... 10

*In re Woolworth Corp. Sec. Class Action Lit.,*
No. 94 CIV. 2217 (RO), 1996 WL 306576 (S.D.N.Y., June 7, 1996) ....................... 13, 17

*Int'l Design Concepts, Inc. v. Saks, Inc.,*
05 Civ. 4754 (PKC), 2006 U.S. Dist. LEXIS 36695 (S.D.N.Y. June 6, 2006) .............. 3, 14, 15

*Kintera, Inc. v. Convio, Inc.,*
219 F.R.D. 503 (S.D.Cal. 2003) .................................................................. 18, 19

*Magee v. Paul Revere Life Ins. Co.,*
172 F.R.D. 627 (E.D.N.Y. 1997) ................................................................. 11

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,*
229 F.R.D. 441 (S.D.N.Y. 2004) ................................................................. passim

*Ohio Cas. Group v. Am. Int'l Specialty Lines Ins. Co.,*
04 Civ. 10282 (LAP) (DF), 2006 U.S. Dist. LEXIS 52070 (S.D.N.Y., July 25, 2006) ............. 9

*Paddington Partners v. Bouchard,*
34 F.3d 1132 (2d Cir. 1994) ...................................................................... 20, 21

*People v. Marin,*
86 A.D.2d 40 (App. Div. 1982) .................................................................. 20

*Royal Ahold N.V. Secs. & ERISA Litig.,*
230 F.R.D. 433 (D. Maryland 2005) .............................................................. 11, 18

*Ruotolo v. City of New York,*
03 Civ. 5045 (SHS) (DF), 2005 U.S. Dist. LEXIS 5958 (S.D.N.Y., Apr. 7, 2005) .................. 9

*Trammel v. United States,*
445 U.S. 40 (1980) ................................................................................. 23

*Tribune Co. v. Purcigliotti,*
No. 93 CIV. 7222 (LAP), 1997 WL 10924 (Jan. 10, 1997) (Katz, Mag.), *modified by*
1998 WL 175933 ................................................................................... 22

*Tribune Co. v. Purcigliotti,*
No. 93 Civ. 7222, 1998 U.S. Dist. LEXIS 5155 (S.D.N.Y. April 14, 1998) ........................ 22

*United States v. Adlman,*
134 F.3d 1194 (2d Cir. 1998) ..................................................................... passim

*United States v. Chatham City Corp.,*
72 F.R.D. 640 (S.D.Ga. 1976) .................................................................... 22

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*United States v. Kovel,*
  296 F.2d 918 (2d Cir. 1961) .......................................................................... 23, 24

*United States v. Rakes,*
  136 F.3d 1 (1st Cir. 1998)................................................................................. 19

*United States v. Schwimmer,*
  892 F.2d 237 (2d Cir. 1989) ............................................................................. 23

*Varel v. Banc One Capital Partners, Inc.,*
  No. CA3:93-CV-1614-R, 1997 WL 86457 (N.D.Tex., Feb. 25, 1997)............................. 16, 19

### Other Authorities

Charles Alan Wright, et al., 8 Federal Practice and Procedure § 2025.................................... 8, 19

### Rules

Fed. R. Civ. P. 26.......................................................................................... 3, 7, 18
Fed. R. Civ. P. 37............................................................................................... 1

### Treatises

Restatement (Third) of Law Governing Lawyers § 79 cmt. e at 597-98 (1998) ......................... 17

Defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein, Jr. and John P. Kiernan respectfully submit this memorandum of law in opposition to Plaintiffs' motion pursuant to Fed. R. Civ. P. 37 to compel the production of documents.

## PRELIMINARY STATEMENT

Plaintiffs' motion to compel the production of reports and investigation materials prepared by Veeco's outside counsel, Kaye Scholer LLP ("Kaye Scholer"), and the forensic accounting experts they retained, Jefferson Wells International, Inc. ("Jefferson Wells"), flies in the face of common sense and controlling Second Circuit precedent for the following reasons.

First, the materials as described in Plaintiffs' moving papers demonstrate that the documents withheld were prepared starting in mid-January 2005 for the purpose of providing legal advice with respect to anticipated litigation. Plaintiffs' papers neglect to mention that Defendants produced many thousands of pages of non-privileged documents prepared before that date that were responsive to Document Request Nos. 7-10 – the subject of their motion.[1] Indeed,

---

[1] Defendants' assertion of the attorney-client privilege and the work product doctrine is narrowly tailored to relate solely to the Kaye Scholer-directed internal investigation that began on January 17, 2005. Defendants assert privilege with respect to the Kaye Scholer and Jefferson Wells investigative reports as well as the work papers (including interview memos) prepared in support of those reports. Defendants are not asserting any privilege as to, and instead have already produced, thousands of pages of non-privileged accounting-related documents, including: (1) work papers relating to potentially improper TurboDisc accounting transactions prepared by Veeco's own financial professionals and internal and external auditors prior to the special retention of Kaye Scholer on or about January 17, 2005; (2) work papers prepared by Veeco personnel after the special retention of Kaye Scholer that were not prepared at the direction of Kaye Scholer; (3) work papers dealing with Veeco's internal audit of the TurboDisc division and its own investigation into TurboDisc's financial controls and the accuracy of TurboDisc's financial statements; (4) work papers and documents prepared by Veeco's financial professionals relating to Veeco's preparation of its restated financial results; and (5) documents relating to Sarbanes-Oxley testing at TurboDisc

[Footnote continued on next page]

as the affidavits accompanying this memorandum demonstrate, :

REDACTED

*See* Affidavit of Veeco's Chief Financial Officer, John

F. Rein, Jr., sworn to on August 25, 2006 ("Rein Aff.") ¶ 12, and the Declaration of Kaye

Scholer partner Rory A. Greiss, dated August 25, 2006 ("Greiss Decl.") ¶ 8.  The circumstances

under which the materials were created likewise established their privileged nature.

REDACTED

REDACTED                              Rein Aff. ¶ 10; Greiss

Decl. ¶ 6.

Rein Aff. ¶ 12.

Second, Plaintiffs' argument that the Kaye Scholer and Jefferson Wells materials do not

constitute work product must be rejected as an attempt to disregard the controlling legal standard

_____

[Footnote continued from previous page]
        prior to the special retention of Kaye Scholer.  Declaration of J. Ross Wallin, dated August
        25, 2006 ("Wallin Decl.") ¶¶ 3-4.

2

announced by the Second Circuit in *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.

1998). Plaintiffs erroneously rely instead on a handful of decisions in the Southern District, all

of which were decided prior to the Second Circuit's decision in *Adlman* and all of which apply a

standard for work product protection that was explicitly disavowed in *Adlman*.

Third, Defendants have not waived the protection afforded by the work product doctrine.

**REDACTED**                                                Rein Aff. ¶ 14. Under

clear Southern District of New York precedent – which Plaintiffs make no attempt to address or

refute –

See *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229

F.R.D. 441 (S.D.N.Y. 2004); *Int'l Design Concepts, Inc. v. Saks, Inc.*, 05 Civ. 4754 (PKC), 2006

U.S. Dist. LEXIS 36695 (S.D.N.Y. June 6, 2006). Moreover, Veeco's only public statements

concerning the Kaye Scholer investigation consisted of limited disclosures of summary

information concerning the findings of the investigation and likewise do not support waiver. *See*

*In re Dayco Corp. Derivative Sec. Litig.*, 99 F.R.D. 616 (S.D. Ohio 1983) (no waiver where

defendants disclosed findings of an internal investigation in a press release).

Fourth, Plaintiffs do not come close to meeting the standard set forth in Fed. R. Civ.

P. 26(b)(3) – namely, a substantial need for the information and an inability to obtain

substantially equivalent information through other means without undue hardship – for

overcoming the protection afforded by the work product doctrine. Plaintiffs have no need for the

Kaye Scholer report and Jefferson Wells materials here, much less a substantial need. As an

initial matter, and as set forth in more detail below,

**REDACTED**

# REDACTED

₁                            (*see* Greiss Decl. ¶ 8), and thus is opinion work product.

Protection of opinion work product is nearly ~~absolute, and is not~~ overcome upon a mere showing

of substantial need and inability to obtain substantially equivalent information through other

means without undue hardship.  Even if the material in question were solely fact work product,

the notion that Plaintiffs will somehow be unable to understand or assess Veeco's restated

financials without reviewing the work product of counsel is baseless.

thousands of pages of documents generated and collected by Veeco's internal finance

professionals which describe the various components of the restatement.  *See* Wallin Decl. ¶¶ 3-

4, Ex. B.  Ernst & Young, Veeco's outside auditor, likewise has produced documents concerning

its audit of Veeco's 10-K for the year end December 31, 2004, which included Veeco's restated

financial results for the first three quarters of that year.  Moreover, in the event the parties'

upcoming mediation is unsuccessful, Plaintiffs will have an opportunity to depose both Ernst &

Young, as well as Veeco's internal finance employees, concerning the various components of the

restatement and the business facts leading up to the restatement (apart from communications

with counsel).

 Lastly, the communications among Kaye Scholer, Jefferson Wells and Veeco, as well as

the communications between Kaye Scholer and Ernst & Young, are protected by the attorney-

client privilege.  These communications were made in confidence for the purpose of obtaining

legal advice from Kaye Scholer, and both Jefferson Wells and Ernst & Young were assisting

Kaye Scholer in rendering that legal advice.

**STATEMENT OF FACTS**

# REDACTED

REDACTED

REDACTED

REDACTED


REDACTED

REDACTED

REDACTED

## ARGUMENT

### I.  The Requested Documents Are Protected by the Work Product Doctrine

#### A.    Plaintiffs Rely On An Outdated Standard

The work product doctrine, which is codified in Fed. R. Civ. P. 26(b)(3), protects "documents and tangible things . . . prepared in anticipation of litigation or for trial." *United States v. Adlman*, 134 F.3d 1194, 1195 n.1 (2d Cir. 1998) (citing Fed. R. Civ. P. 26(b)(3)).  It encompasses documents prepared in anticipation of litigation by a party's representative or agent, and protects against "invading the privacy of an attorney's course of preparation [which] is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order." *Hickman v. Taylor*, 329 U.S. 495, 512 (1947).

In arguing that the Kaye Scholer and Jefferson Wells materials are not protected work product, Plaintiffs largely ignore the governing standard used in this Circuit for determining whether documents are prepared "in anticipation of litigation" and in fact rely on an outdated standard that has been expressly rejected.  Plaintiffs' Br. at 10-13.

The standard required in this Circuit, as announced in *United States v. Adlman*, is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." 134 F.3d at 1202 (emphasis in original) (citing Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal Practice & Procedure § 2024, at 343 (1994)). Excluded from protection are documents that are "prepared in the ordinary course of business or that would have been prepared in essentially similar form irrespective of the litigation." *Id.*

In adopting this standard, the Second Circuit expressly rejected the standard employed in the cases cited by Plaintiffs – namely, that a document must have been prepared "primarily or

exclusively" to assist in litigation in order to be afforded work product protection. *Adlman*, 134 F.3d at 1198-1200 ("We believe that a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text and the policies of the Rule. . . . We see no basis for adopting a test under which an attorney's assessment of the likely outcome of litigation is freely available to his litigation adversary merely because the document was created for a business purpose rather than for litigation assistance."). Indeed, one of the cases cited by Plaintiffs, (Plaintiffs' Br. at 11, 14), *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996), was singled out by the Second Circuit as an example of a decision employing the wrong standard. *Adlman*, 134 F.3d at 1198 n.3.

Although Plaintiffs attempt to limit the standard announced in *Adlman* only to situations where the party's assessment of the outcome of expected litigation is used to evaluate a business decision, (*see* Plaintiffs' Br. at 12), nothing in the *Adlman* decision indicates that its holding is restricted to the narrow facts of that case. Indeed, the *Adlman* court explicitly stated, without qualification, that it was rejecting the "primarily to assist in litigation" test. *Adlman*, 134 F.3d at 1203 ("the district court may have followed the 'primarily to assist in litigation' test, which we here reject."). And not surprisingly, the *Adlman* standard has since been applied by courts facing various fact patterns that are far different than *Adlman*. *See, e.g., Ohio Cas. Group v. Am. Int'l Specialty Lines Ins. Co.*, 04 Civ. 10282 (LAP) (DF), 2006 U.S. Dist. LEXIS 52070, at *6-8 (S.D.N.Y., July 25, 2006) (applying the *Adlman* "because of the prospect of litigation" standard, and finding documents prepared for insurance companies in anticipation of litigation that would follow an expected jury verdict in an underlying matter to be eligible for work product protection); *Ruotolo v. City of New York*, 03 Civ. 5045 (SHS) (DF), 2005 U.S. Dist. LEXIS 5958, at *5-7 (S.D.N.Y., Apr. 7, 2005) (applying the *Adlman* "because of" standard, and finding

notes prepared by plaintiff recording his analysis of the events surrounding an alleged pattern of retaliation against him were subject to work product protection.); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 447 n.9 (S.D.N.Y. 2004) (following the *Adlman* standard, recognizing *Adlman*'s rejection of the narrower "primarily or exclusively to assist in litigation" formulation, and finding that reports relating to an internal investigation into allegedly fraudulent trading were work product). These cases make clear that where a lawyer or those working for the lawyer prepare materials because of anticipated litigation, it is privileged whether or not the lawyer's analysis is being used to advise on a business decision. Indeed, preparing materials to assist in dealing with the anticipated litigation itself – apart from any possible business consequence of the litigation – is the essence of the work product privilege. *See Hickman*, 329 U.S. at 510-11 ("Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference."); *Adlman*, 134 F.3d at 1199 ("the policies underlying the work-product doctrine suggest strongly that work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision.").

Plaintiffs cite no post-*Adlman* cases within the Second Circuit to support their argument that the requested documents were not prepared in anticipation of litigation. Plaintiffs' Br. at 10-13. All of the cases on which Plaintiffs rely are entirely inapposite in that they apply the "principally or exclusively to assist in litigation" standard, rather than the standard that actually governs here, which is the "because of the prospect of litigation" standard set forth in *Adlman*. *See, e.g., In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, No. M8-85 (JSM), 1997 WL 118369, at *2 (S.D.N.Y., Mar. 14, 1997) (noting that the work product doctrine may

only be invoked where it can be shown that the documents "were prepared principally or exclusively to assist in anticipated or ongoing litigation."); *Magee v. Paul Revere Life Ins. Co.*, 172 F.R.D. 627, 640 (E.D.N.Y. 1997) ("a party must demonstrate 'that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation'"); *Kidder Peabody*, 168 F.R.D. at 462-63 (finding that the defendant had not demonstrated "that the documents at issue were created *principally or exclusively* to assist in contemplated or ongoing litigation") (emphasis added); *In re Leslie Fay Co. Sec. Litig.*, 161 F.R.D. 274, 281 (S.D.N.Y. 1995) (finding that an investigation was not conducted "primarily" in anticipation of litigation). *See also In re Royal Ahold N.V. Sec. & ERISA Litig.*, 230 F.R.D. 433, 435 (D.Md. 2005) ("Lead plaintiffs argue persuasively that the *principal* reason was to satisfy the requirement of Royal Ahold's outside accountants, who would not otherwise complete the work necessary to issue the company's audited 2002 financial statements.") (emphasis added). The bottom line is that the "principally," "exclusively," or "primarily" tests are a dead letter in the Second Circuit, which means that Plaintiffs' argument is simply obsolete and legally incorrect.

**B.      The Documents Were Prepared in Anticipation of Litigation**

Although Plaintiffs attempt to argue that the "driving force" behind Veeco's internal investigation was a business purpose, (*see* Plaintiffs' Br. at 2), as *Adlman* makes clear, "[t]he fact that a document's purpose is business-related appears irrelevant to the question whether it should be protected" by the work product doctrine. *Adlman*, 134 F.3d at 1200.

# REDACTED

# REDACTED

Rein Aff. ¶¶ 5-6, 8-10.[2]

# REDACTED

[3] Indeed, it is virtually unimaginable that the senior management and board of directors of a public corporation would not be concerned about the prospect of litigation in the case of a restatement. *See City of Worcester v. HCA Mgmt. Co. Inc.*, 839 F.Supp. 86, 88-89 (D. Mass. 1993) (finding that an Ernst & Young memorandum regarding overpayments made by a

---

[2] Courts have observed that the involvement of counsel is highly probative of whether a company was, in fact, anticipating litigation. *Fine v. Bellefonte Underwriter's Ins. Co.*, 91 F.R.D. 420, 422 (S.D.N.Y. 1981) (retention of counsel, and counsel's involvement in generation of investigative reports is a factor in determining when insurer anticipated litigation); *AMCO Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-cv-06456-SMS, 2006 WL 931437, at *15 (E.D. Cal., Apr. 11, 2006) ("In determining whether a document was prepared in the ordinary course of business or because of litigation, factors to be considered include the type of the document, the nature of the litigation, the relationship of the parties, *the involvement of counsel*, and any other facts peculiar to the case.") (emphasis added).

[3] Not only did litigation ensue just a few weeks after Kaye Scholer was retained to conduct the investigation, the investigation continued after litigation commenced. Plaintiffs are reduced to arguing that documents relating to Kaye Scholer's investigation were not prepared in anticipation of litigation, even after this litigation had commenced. Plaintiffs' Br. at 1.

client hospital, which were discovered after Ernst & Young's audit, was prepared in anticipation of litigation because "it is reasonable to assume that an accounting firm of E & Y's experience and sophistication would immediately recognize, as soon as the allegations were made, that its audit of the Hospital would be challenged.")

# REDACTED

Plaintiffs' Br. at 10.  Identifying the cause of the accounting errors goes to the heart of Veeco's defenses in this litigation – indeed, virtually any litigation challenging accounting errors – and strongly supports the conclusion that Veeco's management and directors were motivated by the anticipation of litigation.  In short, in a case such as this, where "the reality of impending litigation is clear," "[a]pplying a distinction between 'anticipation of litigation' and 'business purposes' is in this case artificial, unrealistic, and the line between is here essentially blurred to oblivion."  *In re Woolworth Corp. Sec. Class Action Lit.*, No. 94 CIV. 2217 (RO), 1996 WL 306576, at *3 (S.D.N.Y., June 7, 1996).  *See also In re Grand Jury Subpoena*, 357 F.3d 900, 910 (9th Cir. 2004) (finding that litigation purpose so permeated any non-litigation purpose that the two purposes could not be discretely separated); *Hollinger Int'l v. Hollinger, Inc.*, 230 F.R.D. 508, 515 n.9 (N.D.Ill. 2005) ("The Court agrees with [defendant] that '[e]very action by a public corporation – even litigation decisions – can be characterized as partly motivated by business considerations.  To hold that any such "mixed motives" preclude work product protection would eviscerate the doctrine.'").

**C.    Disclosure of Internal Investigation Documents to Ernst & Young Did Not Waive Work Product Protection**

Other than a passing reference, unsupported by any authority, Plaintiffs do not assert that

disclosure of internal investigation documents to an auditor constitutes a waiver of work product

protection. Courts in this district have addressed the issue of disclosure to auditors on prior

occasions in *Merrill Lynch*, and *Int'l Design Concepts, Inc. v. Saks, Inc.*, 05 Civ. 4754 (PKC),

2006 U.S. Dist. LEXIS 36695 (S.D.N.Y. June 6, 2006), and found that disclosure of internal

investigation reports to auditors does not waive the work product privilege.

In *Merrill Lynch*, Allegheny sought discovery of two reports produced in connection with

an internal investigation conducted by Merrill Lynch relating to an energy trading scheme that

involved the alleged theft of many millions of dollars by a Merrill Lynch employee. The court

noted that the work product privilege was not waived automatically merely by disclosure to third

persons. *Merrill Lynch*, 229 F.R.D. at 445. Copies of these reports were provided to Merrill

Lynch's outside auditor, Deloitte & Touche, in order to assist Deloitte & Touche in identifying

any potential internal control, accounting or audit issues of which they were not already aware

based on their regular discussions with Merrill Lynch prior to the audit and with the

understanding the Deloitte & Touche would keep the reports confidential. *Id.* at 444. Allegheny

argued that the disclosure of these reports to Deloitte & Touche constituted a waiver of any

privileges. The court stated that it would only find a waiver of the work product privilege where

the disclosure substantially increased the opportunity for potential adversaries to gain the

information. *Id.* at 445-48. The court found that "any tension between an auditor and a

corporation that arises from an auditor's need to scrutinize and investigate a corporation's

records and book-keeping practices is not the equivalent of an adversarial relationship

contemplated by the work product doctrine." *Id.* at 448. Given the relationship between the

14

auditor and client, therefore, the court held that no waiver had occurred and further reasoned that "to construe a company's auditor as an adversary and find a blanket rule of waiver of the applicable work product privilege under these circumstances could very well discourage corporations from conducting a critical self-analysis and sharing the fruits of such an inquiry with the appropriate actors." *Id.* at 449.

In *Saks*, the Audit Committee of the Board of Directors of Saks, Inc. initiated an investigation into improper markdowns and retained a law firm to conduct the investigation. The plaintiff sought a report prepared by a law firm regarding the internal investigation, which was shared with Saks' outside auditor, PriceWaterhouse Cooper ("PwC"), claiming that any work product protection was destroyed when the report was transmitted to PwC. The court rejected plaintiff's argument, finding instead that the report was covered by the work product doctrine and that sharing the report with PwC did not waive that protection. *Saks*, 2006 U.S. Dist. LEXIS 36695 at \*6. In *Saks*, as in *Merrill*, the court concluded the adversarial relationship required to overcome the work product privilege was non-existent in the relationship between auditor and client. *Id.* at \*6 (citing *Merrill Lynch*, 229 F.R.D. at 448). Judge Castel further held that the report was protected by the work product doctrine because it contained "the attorney's mental impressions and professional judgments concerning the magnitude, scope and/or likely merits of the claims, was prepared in contemplation of actual and potential litigation or claims, was created in reliance upon the attorney work product protection and was communicated to the client's auditor under a strict pledge of confidentiality for a valid purpose that serves the interest of the client." *Id.* at \*8-9.

These cases demonstrate the limited disclosure to a company's outside auditors of work product involved in an internal investigation commissioned by the company in anticipation of

litigation does not waive the privilege.  There is simply no basis for inferring the existence of an

adversarial relationship between Veeco and Ernst & Young of the type that would justify a

waiver, as these cases make clear.

II.    **Disclosure Of A Finding Of The Kaye Scholer Investigation In Public
Disclosures And A Letter To The SEC Does Not Result In Waiver**

Plaintiffs cite two documents in support of their assertion that Veeco waived protection

afforded by the work product doctrine through other disclosures – a March 16, 2005 press release

and an August 3, 2005 letter from Veeco's outside counsel, Kaye Scholer, to the SEC.[4]  Both

documents disclose only limited, summary information concerning the findings of the Kaye

Scholer investigation and fall far short of the detailed public disclosures cited in the few cases

where courts have found a waiver of work product protection afforded to an internal

investigation.

Courts repeatedly have held that the public disclosure of the <u>findings</u> of an internal

investigation does not result in a waiver of work product protection.  *See Varel v. Banc One*

*Capital Partners, Inc.*, No. CA3:93-CV-1614-R, 1997 WL 86457, at *4 (N.D. Tex., Feb. 25,

1997) (the disclosure of a letter discussing an investigator's initial review did not constitute a

broader waiver because the letter "[did] not contain all, or even a significant portion, or Altman's

findings and conclusions."); *In re Dayco*, 99 F.R.D. 616 (no broad waiver where defendants

disclosed findings of an internal investigation in a press release).  *See also Merrill Lynch & Co.,*

*Inc. v. Allegheny Energy, Inc.*, 229 F.R.D. at 445 ("The work product privilege is not

_____

REDACTED                                The final version of that

letter, which was sent to the SEC on August 3, 2005, is attached as Exhibit A to the Wallin
Declaration.

automatically waived by any disclosure to third persons."); *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd., Partnership*, 154 F.R.D. 202, 211 (N.D. Ind. 1993) (finding that a press release which revealed the conclusions of an expert investigation did not waive the protection afforded under Fed. R. Civ. P. 26(b)(4)(B) with respect to the expert's investigation because the "miniscule" disclosure "did not begin to recite all of [expert's] studies, factual findings or conclusions" and consequently did not constitute "a significant part of the privileged matter.").

In *Dayco*, the corporation issued a press release summarizing the findings and conclusions of an internal investigation report issued by outside counsel. *Id.* 99 F.R.D. at 619. The plaintiffs argued that the press release had waived work product protection for the report and the underlying notes generated during the internal investigation. *Id.* The court rejected the plaintiffs' argument, holding that the release of mere "findings" of an internal investigation was not sufficient to waive the privilege regarding the communications on which those findings were based. *Id.* The court further noted that the press release neither disclosed a "significant part" of the report, nor summarized evidence found in the report. *Id.*[5]

Like the defendants in *Dayco*, Veeco limited its disclosure to a summary of certain findings of the Kaye Scholer investigation. As Plaintiffs themselves acknowledge, the only finding disclosed in Veeco's March 16, 2005 press release was that "the improper accounting

---

[5] Courts in this district similarly have refused to find waiver of the attorney-client privilege even in the face of more significant disclosures concerning internal investigations than the disclosures at issue here. *In re Woolworth Corp. Secs. Class Action Litig.*, No. 94-Civ.-2217, 1996 WL 306576 (S.D.N.Y. June 7, 1996), the Court refused to find a waiver of the attorney-client privilege even though the corporation had issued a public report that contained a much more extensive factual account of an internal investigation than the Veeco disclosures here. In *Woolworth*, the plaintiffs argued that the report was based on privileged communications from the internal investigation, making the report's release a waiver of the privilege. As with the Veeco press release, however, the report contained none of the communications themselves, and thus the court concluded that there had been no waiver.

entries were made by a single individual at TurboDisc." Plaintiffs' Br. at 13. Similarly, the

letter from Kaye Scholer to the Securities and Exchange Commission (the "SEC"), dated

August 3, 2005, disclosed only that "there were not sufficient facts to come to a conclusion on

whether the improper accounting entries were made intentionally." Wallin Decl. Ex. A.

Veeco's limited disclosures concerning the findings of the Kaye Scholer investigation fall

far short of the extensive disclosures of actual work product at issue in the cases on which

Plaintiffs rely. In *Kidder*, *Royal Ahold* and *Granite Partners*, the defendants quoted directly or

paraphrased liberally from interview notes underlying internal investigations in their public

filings. *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y 1996); *Royal Ahold N.V.*

*Secs. & ERISA Litig.*, 230 F.R.D. 433 (D. Maryland 2005); *Granite Partners, L.P. v. Bear,*

*Stearns & Co., Inc.*, 184 F.R.D 49 (S.D.N.Y. 1999). Here, the attribution to the Kaye Scholer-

Jefferson Wells investigation was very limited.[6]  Similarly, in *Kintera, Inc. v. Convio, Inc.*, 219

F.R.D. 503 (S.D.Cal. 2003), the court rejected plaintiff's claim that certain affidavits were

privileged because plaintiff summarized with specificity the substance of those affidavits on its

website. *Id.* at 510.[7] As the court noted in *Kintera*, "Kintera did not merely relay facts to a third

---

[6]  As with the other public filings cited by Plaintiffs, the August 3, 2005 letter to the SEC
   addressed in a single sentence some of the findings of the Kaye Scholer report – specifically,
   that the former Controller of TurboDisc was solely responsible for the improper accounting
   entries and that no conclusions were reached as to his intent or motives. Wallin Decl., Ex. A,
   at 4.

[7]  For example, one of the disclosures appearing on the Kintera website stated "Kintera has
   been informed by Convio employees that, in spite of their objections, Convio allegedly
   directed its employees to use Kintera's trade secrets for various purposes, including
   developing software and interactive websites for third parties, and other derivative works in
   the private sector. Employees of Convio signed written affidavits under penalty of perjury."
   *Kintera*, 219 F.R.D. at 510-11.

party, but disclosed particular facts *and that they were contained in specific communications they later asserted as being privileged*." *Id.* at 512 (emphasis in original).[8]

# REDACTED

Rein Aff. ¶ 13. Where a release contains only factual findings that do not explicitly reference potentially privileged communications, a finding of waiver is inappropriate. *See United States v. Rakes*, 136 F.3d 1, 5 (1st Cir. 1998) ("the privileged communication and the facts recounted within it are two different things"); Restatement (Third) of Law Governing Lawyers § 79 cmt. e at 597-98 (1998) ("Public disclosure of facts that were discussed in confidence with a lawyer does not waive the privilege if the disclosure does not also reveal that they were communicated to a lawyer.").

Finally, in arguing that Veeco waived the protection of the work product doctrine by making a "selective disclosure" and revealing only "favorable portions of its findings from the investigation" (*see* Plaintiffs' Br. at 13-15), Plaintiffs insinuate that Veeco's public statements

---

[8] Plaintiffs' reliance on the decision in *Ramsey v. NYP Holdings, Inc.*, No. 00 Civ. 3478 (VM)(MHD), 2002 WL 1402055 (S.D.N.Y., June 27, 2002), is misplaced. The central holding of that case was that a forensic handwriting analysis commissioned by the parents of JonBenet Ramsey did not constitute work product. The portion of the opinion relating to waiver (i.e., the portion on which Plaintiffs rely) was dictum and carries no weight. In any case, the disclosure by the Ramseys of conclusions from a forensic handwriting analysis concerning the authorship of the ransom note found in the Ramsey's home (which the Court concluded in dicta went to the "heart" of the forensic handwriting analysis) was far more significant than any disclosures made by Veeco concerning the Kaye Scholer investigation. Veeco's cursory disclosure of certain findings relating to the Kaye Scholer investigation does not imply a broader waiver. *See In re Dayco*, 99 F.R.D. at 619; *Varel*, 1997 WL 86457, at *4.

regarding Kaye Scholer investigation are somehow misleading or incomplete. But the Plaintiffs

do not make this sort of allegation anywhere in their Complaint, and this Court should reject

their attempt to interject such allegations via this motion. *See Paddington Partners v. Bouchard*,

34 F.3d 1132, 1138 (2d Cir. 1994) (discovery inappropriate to uncover facts to support a claim

not alleged in the complaint).

**III.    Plaintiffs Fail to Demonstrate "Substantial Need"**

Plaintiffs claim that they have substantial need for the internal investigation documents

because such documents are "essential to Plaintiffs in preparation of their case" and "the

Requested Documents are not available, in substantially similar form, from any other source."

Motion to Compel at 16. Such boilerplate declarations fall woefully short of the showing

required to overcome the work product privilege.

As an initial matter,                    **REDACTED**

*see* Greiss Decl. ¶ 8) and, therefore, are not subject

to discovery on a showing of "substantial need." *See In re Grand Jury Proceedings*, 219 F.3d

175, 190 (2d Cir. 2000) ("As for work-product that shows 'mental impressions, conclusions,

opinions, or legal theories of an attorney,' . . . we have held that, 'at a minimum such material is

to be protected unless a highly persuasive showing [of need] is made.'"); *In re Circle K Corp.*,

96 Civ. 5801 (JFK), 1997 U.S. Dist. LEXIS 713, at *20 (S.D.N.Y., Jan. 28, 1997) ("[O]pinion

work product receives greater protection and a party seeking discovery of such protected

material must demonstrate 'extraordinary justification.'") (citing *In re Sealed Case*, 676 F.2d

793, 809-10 (D.C. Cir. 1982)); *People v. Marin*, 86 A.D.2d 40, 46 (App. Div. 1982) (holding that

interview memoranda prepared by counsel will be discoverable only in a "rare situation").

Even if the material in question were solely fact work product, Plaintiffs still fail to meet their burden. In order to obtain discovery of so-called ordinary, or non-core, work product, the requesting party must demonstrate both: 1) a substantial need for the information; and 2) an inability to obtain substantially equivalent information through alternative means without undue hardship. *See* Fed. R. Civ. P. 26(b)(3). A "substantial need" exists where "the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, No. 97 Civ. 4978 (LMM), 2002 WL 31385824, at *7 (S.D.N.Y., Oct. 21, 2002) (citation omitted).

The information that Plaintiffs claim is "essential" to their case – the propriety of figures presented in Veeco's initially disseminated financial statements, the evidence supporting the material revisions thereto, and the justification for the figures set forth in the revised financial statements[9] – is readily available to Plaintiffs in both the thousands of pages of documents already produced to Plaintiffs in this litigation and by way of deposition testimony.[10] *See* 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2025 (2d ed. 1994); *Brock v. Frank V. Panzarino, Inc.*, 109 F.R.D. 157, 159 (E.D.N.Y. 1986) (noting that written statements

---

[9] Plaintiffs' argument that they have a "substantial need" for documents supporting the accuracy of the revised financial statements must be rejected entirely. Nowhere in Plaintiffs' Complaint is it alleged that Veeco's disclosures regarding the restatement are incomplete or misleading. Plaintiffs cannot have a "substantial need" for documents regarding the factual basis for claims that are not alleged. *See Paddington Partners*, 34 F.3d at 1138 (discovery inappropriate to uncover facts to support a claim not alleged in the complaint).

[10]

# REDACTED

of prospective witnesses may be relevant or might aid a party in preparing for trial does not amount to substantial need) (citing *United States v. Chatham City Corp.*, 72 F.R.D. 640, 643 (S.D.Ga. 1976)).  Plaintiffs are free to notice the deposition of individuals who can testify as to the information Plaintiffs request, which negates any showing of "substantial need." *See Carter v. Cornell Univ.*, 173 F.R.D. 92, 95-96 (S.D.N.Y. 1997) ("[P]laintiff cannot demonstrate substantial need since all of the information contained in the document is culled from interviews with Cornell employees whom plaintiff has deposed or was certainly free to depose.  While plaintiff could never have asked these witnesses what they told [counsel] or what [counsel] told them . . .  plaintiff was free to ask them about those matters which were the subject of this lawsuit, which is essentially what [counsel] did in preparing the document."); *A.I.A. Holdings*, 2002 WL 31385824, at *7-8.

Ordering production of attorney work product where the relevant witnesses are available for deposition is exceedingly unusual. *See A.I.A. Holdings*, 2002 WL 31385824, at *9 (finding that a witness's availability for deposition defeats a claim of substantial need for work product "because the party seeking discovery can ask the witness himself about the events in issue, and, if the witness recalls the events in issue, the need for notes or other materials prepared by opposing counsel is, thereby, eliminated."); *see also Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222, 1998 WL 175933, at *4 (S.D.N.Y. April 14, 1998) (work product protection cannot be overcome "where persons with equivalent information are available for deposition.").   Such orders are reserved almost exclusively for those rare instances where, on account of illness or the passage of time, the relevant witnesses have virtually no recollection of the issues in question. *See Tribune Co. v. Purcigliotti*, No. 93 Civ. 7222 (LAP), 1997 WL 10924, at *4 (Jan. 10, 1997) (Katz, Mag.), *modified by* 1998 WL 175933 ("Ordinarily, there is no substantial need where the

information can be obtained by deposing witnesses, unless the witnesses are no longer available or are unable to recollect the information sought."). Here, the required showing of "substantial need" is not met because Plaintiffs can gather the requested information through depositions and documents, and there is no indication that witness availability or recollection would be at issue.

## IV.    <u>The Requested Documents Are Protected By The Attorney-Client Privilege</u>

The Kaye Scholer report and Jefferson Wells materials are also protected under the attorney-client privilege. The attorney-client privilege protects from disclosure any confidential communications between the attorney and the client made for the purpose of securing legal advice. *See Fisher v. United States*, 425 U.S. 391, 403 (1976). The privilege is designed to foster "full and frank communication" between the attorney and client, *Upjohn Co. v. United States*, 449 U.S. 383, 388 (1981), and thereby to address the need for "the advocate and counselor to know all that relates to the client's reasons for seeking representation." *Trammel v. United States*, 445 U.S. 40, 51 (1980).

The privilege applies in the context of corporate internal investigations conducted by outside counsel. *See Upjohn*, 449 U.S. at 388-89. Moreover, communications to and from forensic accountants in the conduct of an internal investigation may also be covered by the attorney-client privilege. *See United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). The determining factor as to whether the privilege is extended to communications with such accountants is whether the communications were "made in confidence for the purpose of obtaining legal advice from the lawyer." *Id.* (emphasis removed); *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, J.).

# REDACTED

23

# REDACTED

Greiss Aff. ¶ 7; *see Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("[T]he presence of an accountant, whether hired by the lawyer or by the client, while the client is relating a complicated . . . story to the lawyer, ought not destroy the privilege, any more than would that of [a] linguist [translating a foreign language] . . . ."). "[T]he presence of an accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id.*

# REDACTED

Greiss Decl. ¶ 6.  Thus communications among Veeco, Kaye Scholer and Jefferson Wells relating to the Kaye Scholer investigation are protected by the attorney-client privilege.

The communications between Kaye Scholer and Ernst & Young in connection with the Kaye Scholer internal investigation also are protected by the attorney-client privilege because the communications to Ernst & Young also were made in confidence for the purpose of rendering legal advice. *See Kovel*, 296 F.2d at 922 (2d Cir. 1961).  This is not a case where the communications between Kaye Scholer and Ernst & Young were made for only accounting service reasons.  Although no attorney-client privilege exists where the advice sought by the client is that of the auditor, and not that of the lawyer, *see id.*, that situation is not present here.

# REDACTED

# REDACTED

## CONCLUSION

For all these reasons, defendants Veeco Instruments Inc., Edward H. Braun, John F. Rein,

Jr. and John P. Kiernan respectfully request that this Court deny Plaintiffs' motion to compel the

production of documents.

Dated:   New York, New York
         August 25, 2006

                              GIBSON, DUNN & CRUTCHER LLP

                              By:  _____

                                   John A. Herfort (JH-1460)
                                   Robert F. Serio (RS-2479)
                                   J. Ross Wallin (JW-3911)

                                   200 Park Avenue
                                   New York, New York 10166-0193
                                   Phone: (212) 351-4000
                                   Fax: (212) 351-4035

                                   *Attorneys for Defendants Veeco*
                                   *Instruments Inc., Edward H. Braun,*
                                   *John F. Rein, Jr., John P. Kiernan*

100062173_15.DOC