## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------- x
In re VEECO INSTRUMENTS, INC.          :      Case No.: 7:05-md-01695 (CM)
SECURITIES LITIGATION                  :
------------------------------------------------------- x
------------------------------------------------------- x
THIS DOCUMENT RELATES TO               :
ALL ACTIONS                            :
------------------------------------------------------- x
```

## DECLARATION OF JEFFREY L. OSTERWISE IN FURTHER SUPPORT OF LEAD PLAINTIFF'S MOTION TO VACATE AND REVERSE THE DISCOVERY ORDER OF MAGISTRATE JUDGE GEORGE A. YANTHIS SIGNED JANUARY 24, 2007 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 72

Jeffrey L. Osterwise, hereby declares as follows:

I, Jeffrey L. Osterwise, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that the following is true and correct:

1.      I am an associate of the law firm of Berger & Montague, P.C., lead counsel for Lead

Plaintiff in this litigation.

2.      I submit this Declaration in further support of Lead Plaintiff's Motion to Vacate and

Reverse the Discovery Order of Magistrate Judge George A. Yanthis Signed January 24, 2007

Pursuant to Federal Rule of Civil Procedure 72.

3.      Attached hereto as Exhibits are true and correct copies of the following:

| Exhibit No. | Description |
|---|---|
| A | Relevant portions of the Transcript of the Deposition of John Kiernan, dated February 27, 2007. |
| B | Relevant portions of the Rough Draft Transcript of the Deposition of John F. Rein, dated February 28, 2007. |

Dated: March 1, 2007

Jeffrey L. Osterwise

# EXHIBIT A

# ORIGINAL

1

2  UNITED STATES DISTRICT COURT

   SOUTHERN DISTRICT OF NEW YORK

3  CASE NO.: 05-MD-1695 (CM)

4  ---------------------------x

5  In Re:

6  VEECO INSTRUMENTS, INC.,

7  SECURITIES LITIGATION

8  ---------------------------x

9

10

11      VIDEOTAPED DEPOSITION of JOHN KIERNAN,

12  a witness called by counsel for Plaintiffs, taken

13  pursuant to the Federal Rules of Civil Procedure

14  before Eileen Mulvenna, CSR/RMR and Notary Public

15  within and for the State of New York, taken at

16  the office of Milberg Weiss & Bershad, One Penn

17  Plaza, New York, New York on February 27th, 2007,

18  commencing at 10:17 a.m.

19

20

21

22

23

24

25

166

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | Q.    Where was your office at the time, | 15:17:02 |
| 3 | this late 2004, early 2005 time period?  Not in | 15:17:04 |
| 4 | Somerset, was it? | 15:17:10 |
| 5 | A.    No, my office is based in the Veeco | 15:17:12 |
| 6 | corporate office in Woodbury. | 15:17:16 |
| 7 | Q.    And were there occasions on which | 15:17:20 |
| 8 | Jefferson Wells people came to Woodbury? | 15:17:27 |
| 9 | A.    Yes, they did. | 15:17:31 |
| 10 | Q.    And what did the Jefferson Wells | 15:17:32 |
| 11 | people do when they came to Woodbury? | 15:17:34 |
| 12 | A.    Principally two items, I recall. | 15:17:42 |
| 13 | The first item was when they reviewed the work | 15:17:46 |
| 14 | prepared by management with respect to the | 15:17:50 |
| 15 | revenue adjustments.  All of those accounting | 15:17:52 |
| 16 | records are kept at the Woodbury facility.  When | 15:17:54 |
| 17 | they reviewed the work, they reviewed that at | 15:17:59 |
| 18 | Woodbury. | 15:18:02 |
| 19 | And second, any presentations or | 15:18:04 |
| 20 | reports that they would have given to the audit | 15:18:09 |
| 21 | committee, they may have done in person or by | 15:18:13 |
| 22 | phone in Woodbury.  I'm not sure. | 15:18:17 |
| 23 | Q.    Did the audit committee meet at | 15:18:19 |
| 24 | Woodbury? | 15:18:21 |
| 25 | A.    The audit committee did meet in | 15:18:23 |

167

1              John Kiernan

2    Woodbury.  I don't know, with respect to          15:18:25

3    specifically meetings during this time period, if  15:18:29

4    they were telephonic meetings or there were        15:18:34

5    meetings in Woodbury.  I don't recall.             15:18:36

6        Q.    I see.                                   15:18:47

7              What was the cost of what has been        15:18:58

8    described in Veeco documents as the investigation  15:19:02

9    that included -- that -- in which Jefferson Wells   15:19:07

10   did, in part which you've described and I assume   15:19:10

11   some other things --                               15:19:14

12             MR. HERFORT:  How much money was          15:19:15

13        Jefferson Wells paid?                          15:19:16

14             MS. BRODERICK:  Oh, it wasn't only        15:19:18

15        Jefferson Wells that got paid.                 15:19:19

16        Q.    Isn't that right?                        15:19:20

17             MR. HERFORT:  What is the -- how is       15:19:24

18        this likely to lead to discoverable           15:19:25

19        evidence?                                      15:19:27

20        Q.    You can answer the question.            15:19:28

21             MR. HERFORT:  Wait a minute.  Wait.      15:19:29

22             You've got to put some parameters on     15:19:31

23        your question.  What costs are you talking     15:19:33

24        about?                                         15:19:34

25        Q.    There was an investigation; right?      15:19:38

168

1                    John Kiernan

2   And Jefferson Wells got paid and at least one          15:19:39

3   other entity got paid.                                 15:19:43

4            MR. HERFORT:  Who is that?                     15:19:45

5            MS. BRODERICK:  You know perfectly             15:19:46

6        well.                                              15:19:47

7        Q.     What was the cost of the                    15:19:49

8   investigation?                                          15:19:50

9            MS. BRODERICK:  Let's not waste                15:19:51

10       time.                                              15:19:52

11           MR. HERFORT:  I'm going to instruct            15:19:52

12       him not to answer.                                 15:19:52

13           MS. BRODERICK:  You are?                        15:19:54

14           MR. HERFORT:  Yes.                             15:19:55

15           MS. BRODERICK:  You know you're not            15:19:55

16       supposed to do that.                               15:19:56

17           MR. HERFORT:  I think that gets into           15:19:57

18       the work product area.                             15:19:57

19           MS. BRODERICK:  The cost of an                 15:19:58

20       investigation --                                   15:20:00

21           MR. HERFORT:  The checks that they             15:20:00

22       wrote to Jefferson Wells and Kaye Scholer          15:20:01

23       for work product --                                15:20:04

24           MS. BRODERICK:  For one thing, for             15:20:05

25       God's --                                            15:20:06

169

John Kiernan

1

2      MR. HERFORT:  Carole, keep your           15:20:07

3  mouth shut and let me listen to him.  Okay?   15:20:08

4  You've got to cool it.  I want to -- let's     15:20:11

5  do this professionally.  All right?            15:20:13

6          MS. BRODERICK:  You should start.      15:20:15

7          MR. HERFORT:  You start too.           15:20:16

8          Let me talk to -- Mr. Wallin wants     15:20:17

9  to talk to me.  Let me talk to him.  Don't     15:20:18

10 start yelling.                                 15:20:21

11          (Discussion off the record.)          15:20:21

12          (Counsel leave the room.)             15:20:24

13          THE VIDEOGRAPHER:  3:21 p.m.  We're    15:20:40

14 going off the record.                          15:20:41

15          (Recess from the record.)             15:20:43

16          THE VIDEOGRAPHER:  Time is 3:30 p.m.   15:30:19

17 We're back on the record.                      15:30:21

18          MR. HERFORT:  Miss Broderick has      15:30:23

19 some questions involving numbers, and let's    15:30:24

20 proceed and have them --                       15:30:26

21          MS. BRODERICK:  Would you read the    15:30:28

22 question back and maybe this time he'll        15:30:28

23 answer it.                                     15:30:31

24          MR. HERFORT:  -- have them asked.     15:30:32

25          (Record read.)                        15:30:42

170

1                    John Kiernan

2        A.    My recollection was in the range of          15:30:42

3    about $800,000.                                         15:30:46

4        Q.    And is that cost approximately what           15:31:00

5    Veeco expected when the investigation was               15:31:01

6    started?                                                15:31:05

7        A.    I don't recall what our initial               15:31:09

8    estimate was.                                           15:31:11

9        Q.    Well, let's come at it another way.           15:31:14

10             Did the cost of the investigation             15:31:16

11   come as a shock to you?  And by "you," I mean           15:31:18

12   Veeco and not you personally, Mr. Kiernan.              15:31:20

13       A.    No, I don't believe so.                       15:31:25

14       Q.    And what was Veeco getting for the            15:31:29

15   $800,000?                                               15:31:30

16             MR. HERFORT:  Let's just -- haven't           15:31:34

17        you really covered at some length the              15:31:39

18        actual work that was done?                         15:31:41

19             MS. BRODERICK:  Let me decide.                15:31:43

20             MR. HERFORT:  You do have some                15:31:45

21        rights, that's true.                               15:31:46

22             MS. BRODERICK:  Yes, I do.  You                15:31:47

23        know, what amendment was it that gave us           15:31:48

24        the vote?                                          15:31:50

25             MR. HERFORT:  It's not what we're             15:31:51

171

John Kiernan

| 1 | | |
| 2 | talking about. | 15:31:52 |
| 3 | MS. BRODERICK:  I know you'd rather | 15:31:54 |
| 4 | appeal it, but it's not for you to do. | 15:31:55 |
| 5 | MR. HERFORT:  I really wouldn't.  It | 15:31:57 |
| 6 | makes for an interesting political system | 15:31:58 |
| 7 | to have characters like you voting. | 15:32:01 |
| 8 | MS. BRODERICK:  Careful or you'll | 15:32:03 |
| 9 | get Hillary Clinton. | 15:32:04 |
| 10 | Now, let him answer the question. | 15:32:07 |
| 11 | MS. HIRSH:  I'm sorry. | 15:32:09 |
| 12 | MR. HERFORT:  Maybe I like -- | 15:32:11 |
| 13 | MS. HIRSH:  Right after reading the | 15:32:13 |
| 14 | headline about the Dow falling of 500 | 15:32:14 |
| 15 | points. | 15:32:19 |
| 16 | MS. BRODERICK:  Oh, really?  500? | 15:32:19 |
| 17 | MS. HIRSH:  Something to do with | 15:32:20 |
| 18 | China. | 15:32:21 |
| 19 | MS. BRODERICK:  Let's let him answer | 15:32:23 |
| 20 | the question.  You know you're not allowed | 15:32:24 |
| 21 | to instruct him not to answer except on the | 15:32:26 |
| 22 | grounds of privilege. | 15:32:28 |
| 23 | MR. HERFORT:  You might be getting | 15:32:29 |
| 24 | near. | 15:32:30 |
| 25 | MS. BRODERICK:  Well, near is not | 15:32:30 |

172

1                      John Kiernan

2        good enough.                               15:32:31

3              MR. HERFORT:  You were interested,    15:32:32

4        having gone over the basic work that        15:32:32

5        they've done for the last hour and a half.  15:32:35

6        You want him to repeat it again?            15:32:36

7              MS. BRODERICK:  No.  I asked him a     15:32:39

8        question.  If you're going to instruct him  15:32:40

9        not to answer, at your peril, then do so;   15:32:41

10       if you're not, then --                      15:32:44

11             MR. HERFORT:  If you can answer the    15:32:44

12       question without getting into the           15:32:45

13       impressions and conclusions of the people   15:32:46

14       who did the work for you, answer it.        15:32:47

15       A.      My understanding is that of the     15:32:51

16   $800,000, that was principally paid to three    15:32:54

17   firms.  That it was paid to Ernst & Young for   15:33:02

18   additional audit work that they performed.  It  15:33:07

19   was paid to Kaye Scholer to lead the            15:33:12

20   investigation.  And it was paid to Jefferson    15:33:15

21   Wells for the work they performed.              15:33:18

22       Q.      And is it -- what was your          15:33:21

23   understanding about -- I understand who you paid 15:33:26

24   it to -- about what you got for your $800,000?  15:33:30

25   It's a lot of money.                            15:33:35

173

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | MR. HERFORT:  Read the question back | 15:33:37 |
| 3 | again, please. | 15:33:38 |
| 4 | (Record read.) | 15:33:39 |
| 5 | MR. HERFORT:  I'll object as to | 15:33:55 |
| 6 | form. | 15:33:55 |
| 7 | I think this has been gone over and | 15:33:56 |
| 8 | over and over again for the last two hours. | 15:34:00 |
| 9 | MS. BRODERICK:  Cry. | 15:34:03 |
| 10 | A.    My recollection is that each one of | 15:34:07 |
| 11 | those three firms billed to Veeco on an hourly | 15:34:08 |
| 12 | basis for the work that they performed. | 15:34:13 |
| 13 | Q.    Let me put it a different way. | 15:34:16 |
| 14 | What purpose -- what benefit did you | 15:34:20 |
| 15 | derive for the $800,000 that you paid to these | 15:34:25 |
| 16 | people? | 15:34:30 |
| 17 | A.    The audit committee engaged Kaye | 15:34:36 |
| 18 | Scholer to perform an investigation under their | 15:34:40 |
| 19 | direction, and they're reporting directly into | 15:34:42 |
| 20 | the audit committee.  I'm not privileged to what | 15:34:47 |
| 21 | they performed in that regard. | 15:34:50 |
| 22 | Work performed by Ernst & Young | 15:34:56 |
| 23 | included additional audit procedures to review | 15:34:59 |
| 24 | the adjustments and the account analysis that was | 15:35:06 |
| 25 | performed that was outside of the original scope | 15:35:08 |

174

John Kiernan

| | | |
|---|---|---|
| 1 | | |
| 2 | of their intended audit work, and that Ernst & | 15:35:10 |
| 3 | Young did these additional procedures in order to | 15:35:14 |
| 4 | be able to render an opinion on the financial | 15:35:17 |
| 5 | statements, which they ended up rendering their | 15:35:20 |
| 6 | opinion on the financial statements. | 15:35:24 |
| 7 | Jefferson Wells reviewed the work | 15:35:28 |
| 8 | that was performed by management and also did | 15:35:32 |
| 9 | forensic work. | 15:35:35 |
| 10 | Q.    And what benefit did the company | 15:35:37 |
| 11 | derive from that? | 15:35:39 |
| 12 | A.    I think that was -- the work that | 15:35:52 |
| 13 | was performed by Jefferson Wells enabled Ernst & | 15:35:54 |
| 14 | Young to be able to render their opinion on | 15:36:02 |
| 15 | Veeco's financial statements, and that was a | 15:36:09 |
| 16 | requirement. | 15:36:13 |
| 17 | Q.    Did the work done by Jefferson Wells | 15:36:16 |
| 18 | also enable Ernst & Young to render their opinion | 15:36:19 |
| 19 | on Veeco's internal controls? | 15:36:24 |
| 20 | A.    I believe they considered the work | 15:36:36 |
| 21 | performed, but I don't know what -- the exact | 15:36:37 |
| 22 | reliance that they may have attributed to the | 15:36:41 |
| 23 | work performed by Jefferson Wells. | 15:36:45 |
| 24 | Q.    Okay.  Did there come a time in the | 15:36:47 |
| 25 | third quarter of 2004 that you, Mr. Kiernan, | 15:37:44 |

# EXHIBIT B

ROUGH ASCII VEECO-REIN 2-28-07

1

1      UNPROOFREAD/UNCERTIFIED ROUGH DRAFT ONLY

2      Reporter's Name:  EILEEN MULVENNA, CSR/RMR
       ----------------------------------------------------
3      REALTIME/INTERACTIVE ROUGH DRAFT TRANSCRIPT
         AND/OR UNCERTIFIED REALTIME ASCII DISCLAIMER
4      ----------------------------------------------------
                     IMPORTANT NOTICE:
5               - AGREEMENT OF PARTIES -
          PROCEEDING BEYOND THIS PAGE CONSTITUTES
6      ACCEPTANCE OF AND AGREEMENT WITH THE FOLLOWING
                 TERMS AND CONDITIONS
7      ----------------------------------------------------
       We, the party working with realtime and rough
8      draft transcripts and/or ASCII disks, understand
       that if we choose to use the realtime rough draft
9      screen, the rough printout, or the unedited ASCII
       disk, that we are doing so with the understanding
10     that all rough drafts are uncertified copies
       and...
11
       WE AGREE THEY WILL BE BILLED TO AND PAID FOR BY
12     US

13     We further agree not to comment in the record on,
       share, give, copy, scan, fax or in any way
14     distribute this realtime rough draft or ASCII in
       any form (written or computerized) to any party.
15     However, our own experts, co-counsel, and staff
       may have limited internal use of same with the
16     understanding that we agree to destroy our
       realtime rough drafts and/or any computerized
17     form, if any, and replace it with the final
       transcript/ASCII disk upon its completion.
18
       REPORTER'S NOTE:
19
       Since this deposition has been recorded by me in
20     realtime and is in rough draft form, please be
       aware that there may be discrepancies regarding
21     page and line number when comparing the realtime
       screen, the rough draft/uncertified transcript,
22     rough draft/uncertified ASCII disk, and the final
       transcript/ASCII disk.
23

24

25
                                                    2


1      UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2      Also please be aware that the realtime screen and
       the uncertified rough draft transcript/ASCII disk
3      may contain untranslated steno, reporter's notes
       as parentheticals, misspelled proper names,
4      incorrect or missing Q/A symbols or punctuation,
       and/or nonsensical English word combinations.
                        Page 1

ROUGH ASCII VEECO-REIN 2-28-07
5  All such entries will be correct on the final,
   certified transcript/ASCII disk.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                          3

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2              THE VIDEOGRAPHER:  Good morning.        09:27:10

3    We're on the record.  Today's date is           10:13:09

4    February 28, 2007.  The time is 10:15 a.m.       10:13:11

5                                                     10:13:15

6              This is the videotape deposition of    10:13:16

7    John F. Rein in the case of In Re: Veeco         10:13:19

8    Instruments, Inc., Securities Litigation.        10:13:25

9    Case No. 05-MD-1695.  This case is part of       10:13:27

10   the United States District Court for the         10:13:33
                        Page 2

ROUGH ASCII VEECO-REIN 2-28-07

25    the record.  The time is 5:01 p.m.                16:58:18

230

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    BY MS. BRODERICK:                                  16:58:22

3        Q.    How much did Veeco spend on the          16:58:26

4    investigation that you described in the affidavit 16:58:30

5    that you swore to that was filed in this action   16:58:43

6    in the federal District Court?                     16:58:48

7             MR. SERIO:  I'm sorry could I have        16:58:56

8        that read back, please.                        16:58:57

9             (Record read.)                            16:59:07

10            MR. SERIO:  Objection to form.  You       16:59:08

11       mean outside counsel fees?                      16:59:09

12            MS. BRODERICK:  The whole thing.          16:59:11

13       A.    I think there was a disclosure in        16:59:16

14    the 10-K that enumerated a number like eight or   16:59:17

15    900,000 but I don't specifically recall.          16:59:23

16       Q.    And wasn't the product that             16:59:36

17    investigation needed for you to obtain Ernst &    16:59:43

18    Young's opinions on Veeco's financial statements  16:59:51

19    and its internal controls?                        16:59:57

20            MR. SERIO:  Objection to the form.        17:00:00

21       A.    I'm sorry, what investigation are        17:00:02

22    you referring to?                                 17:00:04

23       Q.    The financial statement -- the          17:00:06

24    investigation you just testified about, the cost  17:00:08

25    of which you said was disclosed in Veeco's public 17:00:10

231

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY

2    document.                                          17:00:15

3        A.    The audit committee selected Kaye        17:00:16

4    Scholer and Jefferson Wells to assist in           17:00:21

Page 190

ROUGH ASCII VEECO-REIN 2-28-07

```
 5    litigation, anticipation of litigation          17:00:28
 6    preparation to evaluate and to give counsel and  17:00:32
 7    guidance to the company.  In addition to         17:00:36
 8    performing some analysis and forensic work in    17:00:39
 9    regard -- in regard to ensuring that the accounts 17:00:46
10    were properly stated and the financial statements 17:00:52
11    were properly stated.                            17:00:57
12              MS. BRODERICK:  Could you read the     17:00:59
13         question back.                              17:00:59
14              (Record read.).                        17:01:00
15              MR. SERIO:  Objection to form.         17:01:18
16              MS. BRODERICK:  It's product of the    17:01:20
17         investigation.                              17:01:21
18              THE REPORTER:  (Nods head in the       17:01:24
19         affirmative.)                               17:01:24
20              MR. SERIO:  Could you hear that?  I    17:01:26
21         couldn't hear it when you were reading it   17:01:27
22         back.                                       17:01:29
23              (Discussion off the record.)           17:01:47
24              (Record read.)                         17:01:48
25              MR. SERIO:  Objection to form.         17:01:57
                                              232
```

```
 1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
 2         Q.    You can answer the question?          17:02:13
 3         A.    I think I thought I did answer the    17:02:15
 4    question, but a portion of that investigative    17:02:17
 5    activity was used to assist us in -- us being    17:02:23
 6    Veeco financial management in creating and       17:02:29
 7    correcting -- creating the required entries and  17:02:33
 8    adjustments and developing financial statements  17:02:39
 9    on a correct basis and so a portion of that      17:02:46
```

Page 191

ROUGH ASCII VEECO-REIN 2-28-07

10    activity was in that -- in assistance in that          17:02:52
11    regard.  And that was required before Ernst &         17:02:56
12    Young could audit our and given an opinion on our      17:02:59
13    December 31, 2004, financial statements.              17:03:03
14        Q.    So it was necessary for Ernst &            17:03:06
15    Young's opinion; right?                               17:03:08
16              MR. SERIO:  Objection to the form.          17:03:10
17        A.    A portion of the activities were            17:03:11
18    necessary.                                            17:03:13
19        Q.    That's the audit opinion; is that           17:03:14
20    correct?                                              17:03:16
21              MR. SERIO:  Objection to the form.          17:03:16
22        Q.    Meaning the opinion on Ernst &             17:03:18
23    Young -- on Veeco's financial statements; right?       17:03:20
24        A.    We --                                       17:03:27
25              (Telephone interruption.)                   17:03:29
                                              233

1     UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2               MS. BRODERICK:  Good grieve.  I             17:03:32
3         thought it was his stomach.                        17:03:34
4         A.    I'd like to just clarify what the           17:03:41
5     question --                                           17:03:43
6         Q.    Okay.  You described financially --         17:03:44
7     financial statement activity that was being           17:03:49
8     performed by Jefferson Wells; isn't that correct?      17:03:51
9         A.    Well, I described financial activity         17:03:54
10    was being performed by Veeco financial management      17:03:56
11    and there was some assistance based on some of        17:04:01
12    the work that Jefferson Wells did.                     17:04:03
13        Q.    Yes.  And then you testified, did           17:04:06
14    you not that had that activity was necessary for       17:04:08
15    Ernst & Young to issue its opinion; is that           17:04:13
                        Page 192

ROUGH ASCII VEECO-REIN 2-28-07

| | | |
|---|---|---|
| 16 | correct? | 17:04:15 |
| 17 | MR. SERIO:  Objection to the form. | 17:04:16 |
| 18 | (Telephone interruption.) | 17:04:17 |
| 19 | MS. BRODERICK:  Turn it off. | 17:04:20 |
| 20 | MR. SERIO:  Sorry. | 17:04:24 |
| 21 | MS. BRODERICK:  How many do you | 17:04:25 |
| 22 | have? | 17:04:26 |
| 23 | (Telephone interruption.) | 17:04:30 |
| 24 | (Discussion off the record.) | 17:04:40 |
| 25 | Q.    Okay? | 17:04:48 |

234

| | | |
|---|---|---|
| 1 | UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY | |
| 2 | A.    It was necessary for Veeco | 17:04:48 |
| 3 | management to get their financial accounts and | 17:04:50 |
| 4 | financial statements correct before Ernst & Young | 17:04:54 |
| 5 | would certify to our statements or we could ask | 17:04:56 |
| 6 | them to review and audit the underlying financial | 17:05:01 |
| 7 | statements.  And part of the Jefferson Wells' | 17:05:05 |
| 8 | activity was utilized to assist us in verifying | 17:05:09 |
| 9 | that the accounts were correct. | 17:05:15 |
| 10 | Q.    So part of the Jefferson Wells' | 17:05:16 |
| 11 | activity was an activity which was engaged in for | 17:05:18 |
| 12 | the purpose of correcting records which was | 17:05:28 |
| 13 | necessary to do to get Ernst & Young to certify | 17:05:31 |
| 14 | Veeco's financial statements; is that correct? | 17:05:37 |
| 15 | MR. SERIO:  Objection to the form. | 17:05:40 |
| 16 | A.    It was -- we utilized Jefferson | 17:05:43 |
| 17 | Wells' activity to verify that what management | 17:05:47 |
| 18 | had come up with, which is what Ernst & Young was | 17:05:51 |
| 19 | looking at, was accurate. | 17:05:55 |
| 20 | Q.    Okay.  So part of what Jefferson | 17:05:58 |

Page 193

ROUGH ASCII VEECO-REIN 2-28-07

21    Wells was doing was used to get Ernst & Young to          17:06:00
22    issue an opinion on Veeco's financial statements;        17:06:07
23    isn't that right?                                         17:06:10
24              MR. SERIO:  Objection to the form.             17:06:11
25         Asked and answered.                                 17:06:12
                                                        235

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2         A.    I think I did answer it.                        17:06:13
3         Q.    It's yes or no; is that correct?               17:06:15
4              MR. SERIO:  Objection to the form.              17:06:17
5         A.    I don't think it is.  I don't think            17:06:18
6    it is yes or no.  I think I gave my explanation.           17:06:19
7         Q.    What was the Jefferson Wells' work             17:06:24
8    on Veeco's fixing up TurboDisc's records used              17:06:28
9    for?                                                       17:06:35
10             MR. SERIO:  Objection to the form.              17:06:37
11        A.    I described that Veeco management --            17:06:38
12   financial management did the analysis and the              17:06:42
13   correction of the errors that were uncovered.              17:06:49
14   And that a portion of what Jefferson Wells' work           17:06:52
15   was utilized to verify that the amounts and                17:06:58
16   correction of errors that Veeco management,                17:07:04
17   financial management had established were in fact          17:07:07
18   verified by some of the work that Jefferson Wells          17:07:12
19   did.                                                       17:07:14
20        Q.    And is it also correct that Veeco              17:07:16
21   gave Ernst & Young Jefferson Wells' work to show           17:07:19
22   Ernst & Young that Jefferson Wells agreed with             17:07:27
23   Veeco management?                                          17:07:31
24             MR. SERIO:  Objection to the form.              17:07:32
25        A.                                                    17:07:37
                                                        236

Page 194

ROUGH ASCII VEECO-REIN 2-28-07

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2             THE WITNESS:  Repeat that, please.       17:07:37
3         I just like to make sure I understand every   17:07:38
4         word in that question.                       17:07:41
5             (Record read.).  Select                  17:07:56
6         A.      Selected schedules that management    17:08:06
7    used in verifying its correction of the errors in  17:08:07
8    the accounts may have been given to Ernst & Young  17:08:15
9    and some of those work papers may have come from   17:08:18
10   Jefferson Wells.                                   17:08:21
11        Q.      Wait a minute.  Did Veeco give Ernst  17:08:24
12   & Young any documents that showed that Jefferson   17:08:31
13   Wells agreed with Veeco management about Veeco     17:08:34
14   management's correction of TurboDisc accounts?     17:08:40
15             MR. SERIO:  Objection to form.           17:08:46
16        A.      I know that there was a report that   17:08:47
17   was prepared for the audit committee and for Kaye  17:08:48
18   Scholer and I believe that that report was shared  17:08:52
19   with Ernst & Young.  I don't know what purpose     17:08:56
20   that Ernst & Young found with that report.  I      17:08:59
21   also know that were certain analysis there were    17:09:03
22   done by Jefferson Wells personnel that were        17:09:06
23   utilized by Veeco management and may have been     17:09:10
24   reviewed by Ernst & Young in establishing that     17:09:12
25   the accounts were proper and the financial         17:09:14
                                              237

1    UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
2    statements were proper.                            17:09:16
3         Q.      And those analyses said we,           17:09:18
4    Jefferson Wells, agree with Veeco's management;    17:09:21
5    is that correct?                                   17:09:23
                   Page 195

ROUGH ASCII VEECO-REIN 2-28-07

```
 6                  MR. SERIO:   Objection to the form.        17:09:24
 7       I don't -- I think I would instruct him not          17:09:26
 8       to answer as to the substance of what the            17:09:29
 9       Jefferson Wells report said.  So you don't           17:09:32
10       immediate to answer.                                 17:09:35
11            Q.     And you refuse to answer?                17:09:38
12            A.     On advice of counsel, I --               17:09:40
13            Q.     Okay.  Are you prepared to tell me       17:09:42
14       whether Jefferson Wells' work played any part in     17:09:45
15       obtaining Ernst & Young's audit opinion on           17:09:53
16       Veeco's financial statements?                        17:09:58
17            A.     I think --                               17:09:59
18                  MR. SERIO:   Objection to the form.       17:10:00
19            A.     I think I previously described that.     17:10:01
20            Q.     No, this is a yes or no.  So far as      17:10:04
21       you're aware, did Jefferson Wells' work play any     17:10:06
22       part in obtaining Ernst & Young's audit opinion      17:10:09
23       on Veeco's financial statements?                     17:10:14
24                  MR. SERIO:   Objection to the form.       17:10:15
25            A.     Jefferson Wells performed certain        17:10:17
                                              238
```

```
 1       UNPROOFREAD ROUGH DRAFT/WORKING COPY ONLY
 2       analysis and assisted Veeco management in            17:10:20
 3       preparing the corrected errors and financial         17:10:23
 4       statements and that information was presented to     17:10:26
 5       Ernst & Young prior to them issuing their            17:10:31
 6       opinion.                                             17:10:32
 7            Q.     Okay.  Now, Ernst & Young issued         17:10:34
 8       another opinion in connection with Veeco's 2004      17:10:39
 9       10-K, didn't they?                                   17:10:45
10                  MR. SERIO:   Objection to the form.       17:10:47
11            A.     Could you tell me what you're            17:10:48
                                Page 196
```